# EDMOND HENRY DAUGHERTY *v.* STATE OF MARYLAND

[No. 73, September Term, 1978.]

*Decided November 3, 1978.*

The cause was argued before MOORE, MELVIN and MACDANIEL, JJ.

*R. Patrick Hayman, Assigned Public Defender,* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis Bill Burch, Attorney General,* and *Logan C.*

*Widdowson, State's Attorney for Somerset County,* on the brief, for appellee.

MacDANIEL, J., delivered the opinion of the Court.

On January 31, 1978, the appellant, Edmond Henry Daugherty, was convicted by a jury in the Circuit Court for Somerset County of possession of marijuana.

On October 8, 1977, Maryland Natural Resources Police Officer Anthony Collins, a "game warden," was on a routine patrol in northern Somerset County. At approximately 5:30 p.m., he observed a deer standing in a field near the intersection of Polks and Allen roads. No other automobiles or persons were in the vicinity. Officer Collins drove off to check a nearby fishing pond and returned to the same spot approximately ten minutes later. This time he saw a car pulled off to the side of the road. The officer also pulled off, and waited until the appellant came out of the woods toward his car.

Officer Collins stopped the appellant and asked him what he was doing. The appellant indicated that he was hunting squirrel. Officer Collins then checked the appellant's shotgun and found that it was loaded with rifled slugs.[1] When questioned about the rifled slugs, the appellant said that he had put them in to protect himself from some wild dogs that he had seen in the woods. Officer Collins issued a Department of Natural Resources citation, charging the appellant with hunting deer with firearms in his possession during closed season, a misdemeanor. The appellant signed the citation.

The officer then went over to the appellant's car and, without the appellant's consent, began to search the hunting jacket and game bag on the rear seat of the car. He noticed numerous spent shotgun shells in the car, and, as he was getting out, he found a brown paper grocery bag under the front seat. After feeling it, he opened it and discovered three plastic "baggies" filled with approximately an ounce of marijuana apiece.

---

1. Rifled slugs are used for hunting larger game, like deer.

Section 1-204 of the Natural Resources Article, Annotated Code of Maryland, provides:

> "(a) *Law enforcement powers.* — In addition to any other powers conferred by this title, the Secretary and every natural resources police officer shall have all the powers conferred upon police officers of the state. These powers may be exercised anywhere within the state. The natural resources police force specifically is charged with enforcing the natural resource [resources] laws of the state."

The appellant contends that his pre-trial motion to suppress the marijuana evidence should have been granted because the search and seizure violated his Fourth Amendment right to be free from unreasonable searches and seizures,[2] applicable to the States through the Due Process Clause of the Fourteenth Amendment. We agree.

## I.

Officer Collins' search of the appellant's car without having first obtained a search warrant cannot be justified as a search incident to an arrest. That exception to the warrant requirement encompasses only in-custody arrests. As Officer Collins acknowledged in the trial below, a game law citation such as the one issued to the appellant is like a traffic ticket and is not an in-custody arrest. *See Shelton v. State,* 3 Md. App. 394, 239 A. 2d 610 (1968); *United States v. Robinson,* 414 U. S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), and the cases cited therein. Even if there had been an in-custody arrest, a general search of the automobile would not have been permitted, and the search would have been limited to the person's body and "wingspan." *Dixon v. State,* 23 Md. App. 19, 327 A. 2d 516 (1974).

---

2. The Fourth Amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

## II.

The second possible theory that could legitimate the warrantless search of the appellant's vehicle is the so-called "automobile exception" to the general requirement of a search warrant. It was first established in *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). As the Maryland Court of Appeals stated in *Mobley and King v. State,* 270 Md. 76, 80, 310 A. 2d 803, 806, *cert. denied,* 416 U. S. 975, 94 S. Ct. 2003, 40 L.Ed.2d 564 (1973):

> "Under that exception, a motor vehicle, unlike a home, may be searched without a warrant or previous arrest under appropriate circumstances when the officer has probable cause in the constitutional context to believe that the vehicle contains the fruits, instrumentalities, or other evidence of a crime." (Citations omitted.)

Under the "automobile exception," exigent circumstances also must be shown.

The "probable cause" requirement has been incorporated into § 10-1104, Searches without warrant, of the Natural Resources Article:

> "(a) *In general.*—If a natural resources police officer or any law enforcement officer has *probable cause* to believe that any species of wildlife or any device is possessed in violation of this title, and it is not possible or feasible to secure a search warrant in time to seize the bird, mammal, amphibian, or reptile or the device, then he may examine any boat, railway car, box, crate, package, or game bag without a warrant." (Emphasis added.)

Although there are no Maryland cases, cases in other states make it clear that the standard of probable cause generally applicable to automobile searches is also applicable to automobile searches relating to game law violations. *See, for example, U.S. v. Stricklin,* 534 F. 2d 1386, *cert. denied,* 429 U. S. 831 (1976), and *State v. Krogness,* 238 Or. 135, 388 P. 2d 120, *cert. denied,* 377 U. S. 992, 84 S. Ct. 1919, 12 L.Ed.2d 1045

(1963). As the *Krogness* Court made clear, to allow a different standard for game law violation searches would be both unwise and unconstitutional:

"It would put the decision to search or not to search virtually within the uncontrolled discretion of the police. That is exactly what the Fourth Amendment was intended to prevent." 388 P. 2d at 127.

The applicable standard of probable cause to search an automobile for game law violations, then, is as follows:

"Probable cause to conduct a warrantless search of an automobile under *Carroll* and its progeny exists in the constitutional sense when the facts and circumstances within the officer's knowledge, and of which he had reasonably trustworthy information, are such as would warrant a man of reasonable caution in believing that the vehicle contained articles lawfully subject to seizure. See, *Duffy v. State,* 243 Md. 425, 221 A. 2d 653 (1966); *Edwardsen v. State,* 243 Md. 131, 220 A. 2d 547 (1966); *Young v. State,* 234 Md. 125, 198 A. 2d 91 (1964). The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction, but more evidence than that which would arouse a mere suspicion. *Gilmore v. State,* 263 Md. 268, 283 A. 2d 371 (1971); *Sterling v. State,* 248 Md. 240, 235 A. 2d 711 (1967); *Graham v. State,* 239 Md. 521, 212 A. 2d 287 (1965); *Mulcahy v. State,* 221 Md. 413, 158 A. 2d 80 (1960). To satisfy the probable cause requirement, therefore, an officer is not required to have actual knowledge that the vehicle contains fruits, instrumentalities, or other evidence of a crime at the time he undertakes his warrantless search. '. . . [o]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. . . .' *Spinelli v. United States,* 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)." *Mobley, supra,* at 81 [806-07].

Under the facts of this case, it is clear that Officer Collins did not have probable cause to search the appellant's car for game law violations. Officer Collins testified below that he did not believe that the automobile contained a deer carcass. The two other types of game of which there was any mention were squirrel or quail. Neither was out of season, nor was there any reason for Officer Collins to believe that, if the appellant had shot anything, he had gone over his limit. Officer Collins was questioned in the court below as follows:

"Q  Now, what facts were in your mind to lead you to believe that his automobile contained any bird, mammal, amphibian or reptile that would constitute the violation of the natural resources section of the code?

A  His hunting coat. I asked him whose it was and he said [it] was his. And I have the right to search game bags and that is why I opened the car door and looked in the hunting clothing.

\* \* \*

Q  Well, did you suspect that the bag contained something, the gunning coat contained something?

A  I didn't suspect it to contain something, but we have to check the game bag to determine whether or not there is over limit or something in his possession, which is during closed season."

Evidently, Officer Collins was under the impression that he did not need probable cause or exigent circumstances to search the car and the clothing and game bag for evidence of game law violations. This is clearly contrary to the statute and the case law.

### III.

Officer Collins' search of the appellant's automobile also exceeded the permissible scope of searches for game law violations. Assuming, *arguendo,* that Officer Collins had

probable cause to search the automobile, he should not have opened the paper bag which contained the marijuana.

Section 10-1104, Searches without warrant, of the Natural Resources Article, provides:

"(b) *Warrantless search of automobiles.* — In this event,[3] a natural resources police officer, in uniform or accompanied by a uniformed police officer, may stop and search an automobile, any vehicle, or trailer *for the purpose of examining the game bags.* He may also determine whether the person has an appropriate license." (Emphasis added.)

We do not feel that the grocery bag qualifies as a game bag under the above statute, nor is it suitable for use as a game bag. A standard game bag usually is made of rubberized cloth for the purpose of blood-proofing. In addition, when Officer Collins felt the bag, he should have realized that it did not contain anything sufficiently hard or heavy to be game, and he should have discontinued the search.

Our limitation of the scope of the search of the appellant's car is also supported by general considerations behind the constitutional prohibition against "unreasonable" searches and seizures. The United States District Court for the District of Maryland, in *Richardson v. State of Maryland,* 398 F. Supp. 425, 442 (1975), emphasized that:

"First, the search must be for *specific* items, and not a general exploration. . . . Second, the *scope* of the search is limited by the size of the item for which the search is being conducted." (Citations omitted.)

As indicated above, the search of the appellant's automobile violated the *Richardson* principles and exceeded the scope of a "reasonable" search and seizure.

IV.

Since Officer Collins lacked probable cause to justify the

---

3. We construe "in this event" to mean "in the event that the probable cause and exigent circumstances requirements of subsection (a) are satisfied."

search of the appellant's automobile without a warrant and exceeded the scope of a reasonable search, that search was illegal, and the evidence obtained therefrom (marijuana) should have been excluded. *Everhart v. State,* 274 Md. 459, 337 A. 2d 100 (1975), *rev'g,* 20 Md. App. 71, 315 A. 2d 80 (1974); *Wong Sun v. United States,* 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963).

*Judgment reversed.*
*Costs to be paid by Somerset County.*